165 So.2d 792 (1964)
Robert John HOTT, Jr., Appellant,
v.
Marian Almy FUNK, Appellee.
No. 4741.
District Court of Appeal of Florida. Second District.
June 10, 1964.
Rehearing Denied July 9, 1964.
Maurice F. Sprinz, Gale K. Greene, Sarasota, for appellant.
Lawrence J. Robinson of Paderewski, Cramer & Robinson, Sarasota, for appellee.
ANDREWS, Judge.
The plaintiff, whose vehicle was struck from the rear by the defendant's vehicle after it had come to a stop in a line of traffic, appeals a judgment entered on a jury verdict for the defendant. He assigns as error the refusal of his motion for a directed verdict on the issue of liability at the close of all the evidence and the denial of his subsequent motion for a new trial.
The plaintiff, driving a Corvette, and the defendant, driving a Buick, were proceeding north on U.S. Highway No. 41 in Sarasota at approximately 8:00 A.M. Traffic was heavy and the four-lane highway was wet. The defendant, who was on her way to work, stopped for a traffic light at Weber Street, several intersections south of Arlington Street, where the collision subsequently occurred. She encountered no difficulty with her brakes and came to a normal stop. At this time she was in the eastern, *793 and the plaintiff was in the western, of two northbound through traffic lanes. Since she anticipated making a left turn eventually, she crossed over to the western through lane and followed the plaintiff for several blocks.
There is no evidence that there was a traffic light at the intersection of U.S. Highway No. 41 and Arlington Street. However, it appears that there was an additional lane at this intersection for northbound motorists intending to make a left turn. As the parties approached this intersection there were at least four vehicles ahead of them in the western through lane, a Ford, a Sunbeam, an English Ford and a Cadillac. The Ford stopped or slowed down to make a left turn from the through lane. The Sunbeam, the English Ford, the Cadillac and the plaintiff's Corvette came to stops behind the Ford. The defendant's Buick failed to stop in time and struck the rear end of the plaintiff's Corvette forcing it to strike the Cadillac in front and causing damages in the front and rear totaling approximately $1,100.
The driver of the English Ford had slowed down or stopped for a traffic light at Hillview Street, immediately south of Arlington Street. He had just accelerated into third gear when the Sunbeam came to a stop ahead of him. After stopping behind the Sunbeam, he watched the Cadillac and the plaintiff's Corvette come to stops through his rearview mirror. He then looked ahead, saw the Ford making a left turn from the through lane, and heard a collision behind him. The collision occurred about 15 seconds after he had come to a stop.
The plaintiff testified that the block between Hillview and Arlington is relatively short, that he had been driving at a speed of about 25 to 30 miles per hour before he came to a stop, and that he had been following traffic at a distance of about 50 to 60 feet. The plaintiff further testified that he saw the defendant approaching through his rearview mirror, that he first saw her at a distance of about 80 feet, and that she was then traveling at about 35 miles per hour. He was struck about 4 to 7 seconds after he had come to a stop.
The defendant, called as an adverse witness, testified that she was driving 3 to 4 car lengths or about 60 to 65 feet behind the plaintiff at a speed of 20 to 25 miles per hour, or more. When she saw the plaintiff's brake lights, she immediately applied her brakes "hard." but her automobile "slid forward" about 60 feet striking the rear end of the plaintiff's vehicle. She testified that she could "see" she was not going to stop and that this came as a "surprise" to her. The defendant also testified that the plaintiff's Corvette and the Cadillac were traveling very close together, "too close * * * for comfort."
The investigating officer found "39 feet of skid marks leading to the Buick." The skid marks "ended at the tire, the right tire." The skid marks were straight and gave no indication of swerving. There were two skid marks. The officer could not tell whether they had been made by two or four wheels.
The plaintiff contends that the collision occurred under circumstances giving rise to a presumption of negligence on the part of the defendant and that her explanation of it was legally insufficient to rebut this presumption.
The case before us is a close one, as the trial judge recognized. While there are numerous circumstances from which the jury might reasonably have found that the collision was caused by the defendant's negligence, we do not agree that this was the only reasonable conclusion. The first vehicle came to a stop at an unexpected place. While the driver of the English Ford testified that the first five cars came to "normal" stops, he also testified that "it happened quickly." Considering the approximate speeds and distances which the parties described and the number of vehicles involved, the jury might reasonably have found that the defendant was confronted *794 with an unexpected stop that was more sudden than described by this witness at a point some distance from the intersection. In short, the evidence gave rise to a variety of permissible inferences and presented an issue of negligence for determination by a jury. Jeskey v. Yellow Cab Company, Inc., Fla.App. 1962, 136 So.2d 376; Greyhound Corp. v. Ford, Fla.App. 1963, 157 So.2d 427.
Accordingly, the plaintiff's motions properly were denied.
Affirmed.
SMITH, C.J., and WHITE, J., concur.